### The People of the State of Illinois, Defendant in Error, v. W. B. Smith et al., Plaintiffs in Error.

1. CONSPIRACY—*when indictment sufficient.* An allegation that the defendant and one Samuels "did conspire and agree together" is sufficiently technical and certain to charge the crime of conspiracy.

2. CONSPIRACY—*what evidence competent.* Evidence tending to show the relation of the parties, the purpose of the combination, the preliminary steps taken to effect that purpose, even before the object to be effected is certainly ascertained, is within the scope of investigation to establish a conspiracy.

3. CONSPIRACY—*what evidence competent.* Once there have been shown facts evidencing the existence of a conspiracy, all the acts and conversations of any one co-conspirator are admissible against all.

4. CRIMINAL LAW—*when election as to indictments properly not*

*required.* It is not error to refuse to compel the state's attorney to elect under which of two pending indictments he will proceed where a sufficiently specific bill of particulars has been supplied to the defense.

5. CONTINUANCE—*when properly denied in criminal case.* A continuance asked by the defendant because of the absence of a material witness is not improperly denied where the expected evidence of such witness is admitted.

6. TRIAL—*when arguments of counsel improper.* It is improper for the state's attorney urging a conviction to disclose the property situation of the parties, but *held,* in this case, that the impropriety was not ground for reversal.

Criminal prosecution for obtaining money by false pretenses. Error to the Circuit Court of Jackson county; the Hon. WILLIAM N. BUTLER, Judge, presiding. Heard in this court at the August term, 1908. Affirmed. Opinion filed March 4, 1909.

W. F. ELLIS, WM. P. WILSON and FRED G. BIERER, for plaintiffs in error; R. J. STEPHENS, of counsel.

W. A. SCHWARTZ, JOHN M. HERBERT, ISAAC K. LEVY, W. H. STEAD and OTIS F. GLENN, for defendant in error.

MR. PRESIDING JUSTICE MYERS delivered the opinion of the court.

In this case the plaintiffs in error were indicted, convicted and sentenced under an indictment charging conspiracy to obtain money by false pretenses from the Elkville State Bank, a corporation organized under the laws of the State of Illinois.

In May, 1906, W. B. Smith and R. P. Samuels, strangers in the community, went to Elkville, Illinois, a village of about one thousand inhabitants, to organize and establish a bank. By solicitation and representation they secured subscriptions from persons living in Elkville to make up the required amount of capital stock, $25,000. In due course the bank was organized with Samuels as cashier and opened for business on September 18, 1906. In self-introduction, and as inducement for subscribers for the capital stock, it was

represented by Smith and Samuels that Smith was financially connected with divers large business enterprises throughout the county, that Samuels, a young man, had recently inherited a large sum of money and wanted to embark in the banking business, and that together they would take $10,000 of the required stock, leaving to local parties the remainder of $15,000. It was further promised and arranged with the proposed subscribers, that the directors and officers of the bank, except the cashier, should be of the local subscribers, and that Samuels was to be appointed cashier. In the list of those agreeing to subscribe, W. B. Smith appears for $7,500 and Samuels for $2,500, aggregating $10,000, as proposed, but in the list of subscribers to the capital stock taken by the commissioners under license to incorporate the bank, the name of W. B. Smith disappears altogether, and that of Samuels remains for $5,500. It nowhere appears that Samuels, at that time, had means present or prospective, with which to pay the amount of his subscription. To effect this, however, James S. Nall, one of the plaintiffs in error, sent Samuels a check for $1,500, on the Missouri Valley Bank of Grand Tower, Illinois, of which Nall was then president, with directions to refund by check on the Elkville Bank as soon as it was opened for business. With this check and $4,000 borrowed of a party in St. Louis, upon his forty-five shares of stock, as security, Samuels was able to make showing of payment on stock. Other subscribers having paid in the amount subscribed, final certificate of incorporation was obtained and, as already stated, the bank on September 18, 1906, opened for business. Immediately thereafter worthless checks and drafts, aggregating large sums, were sent to Samuels by Smith and Nall to be credited in each instance as a cash deposit, usually to Smith's account, and against which checks were drawn and paid before the worthless drafts could be returned in due course of business. By this manner of business and manipulation of ex-

change, the bank was defrauded of $5,691.33 which, according to ledger account, was charged to Smith $5,191.33, and to Nall $500. The evidence is some-. what voluminous, oral and documentary, relating to letters, drafts, checks, connections and tranactions touching the matters in controversy, but greater detail of statement will not be necessary to a discussion of the questions to be determined. The legality and regularity of proceedings in the trial court was challenged upon many points by timely objection and exception which, by numerous errors duly assigned, are brought before this court for review. We will not discuss in order and detail all the errors assigned. To do so would prolong this opinion beyond what is necessary to make clear our conclusions and the reasons therefor. We have carefully read all the evidence and are impressed by the gravity and importance of the case and have fully weighed and considered the argument of counsel in their several contentions.

The indictment herein charges the plaintiffs in error with agreeing and conspiring with one R. P. Samuels, who is now deceased, to obtain from the Elkville State Bank, $5,200 by false pretenses. At the August term, 1908, of this court, the writ of error was dismissed as to W. B. Smith, and the cause is now pending on further proceeding, by James S. Nall, alone.

The trial court did not err in denying the motion to quash. The allegation that the defendants with one Samuels "did conspire and agree together" is sufficiently technical and certain to charge the crime of conspiracy. Nor was it error not to compel the prosecution to elect under which of two pending indictments against defendants he would proceed. A sufficiently specific bill of particulars was furnished by the state's attorney, and the defendants' motion in that regard was properly overruled, as was, also, the motion by the defendants for a continuance. The ad-

mission by the state of the evidence expected from absent witnesses mentioned in the affidavit was all that could be required, and especially, as one of the principal witnesses on account of whose absence the motion was founded, appeared and testified. There was no showing under second motion to quash to invalidate the indictment. The evidence proposed, even if admitted, was not sufficient to impeach the indictment or the action of the grand jury. Gitchell v. The People, 146 Ill. 175.

Complaint is made that some of the evidence antedates the certificate of the bank organization and therefore was not properly admitted, being in proof of a conspiracy to defraud a bank not then in existence. Specific objection was not made to this evidence in the trial and it was not therefore preserved for consideration on appeal. However, it may be observed, in this connection, that evidence tending to show the relation of the parties, the purpose of the combination, the preliminary steps taken to effect that purpose, even before the object to be effected is certainly ascertained, is quite within the scope of investigation to establish a conspiracy, the very gist of this action, and within the rule announced and discussed in the case of Spies v. The People, 122 Ill. 1. Once there have been shown facts evidencing the existence of a conspiracy, all the acts and conversations of any one co-conspirator are admissible against all, and within that rule, all the letters of Samuels were properly admitted in evidence. That Samuels was advised and warned of the worthlessness of certain bills passing through the bank (Exhibits 44, 45 and 46) was important and material as tending to prove the action and intent of one of the alleged conspirators, and, under the rule just stated, was admissible against all. Other rulings in the admission and exclusion of evidence are challenged by the plaintiffs in error, but the objections were properly overruled in the main for reasons already stated. We do not find substantial or

prejudicial error in the court's ruling upon evidence.

It was not proper for the state's attorney in his argument to the jury to assert and press his belief in the defendants' guilt, though to do so was no more than to express, what may be inferred from an earnest argument to convince the jury, that guilt was the only reasonable conclusion from the evidence. That he should advocate conviction carries with it the necessary inference of his belief for he would fail in duty by prosecuting one whom he believed to be innocent of the charge. He should not have been permitted to discuss the insolvency of the defendants as an element in fixing punishment by the jury, for the law makes no property distinction when imposing penalty for conspiracy. We do not think, however, that this judgment should be reversed because of the remarks made in argument.

Complaint is made of a number of instructions, some of which are subject to criticism, being repetition of a correct principle of law, or the statement of an abstract proposition not applicable. In a large number of instructions asked and given on both sides, such errors are likely to occur, but in this case we think the errors and repetitions were harmless. The instructions as a whole, when considered together, are substantially accurate in the statement of legal principles by which the jury should be governed and we cannot say that either in form or substance they were calculated to mislead the jury to the prejudice of the defendants.

The evidence tends strongly to prove the guilt of the defendants as charged in the indictment and after a careful consideration of the entire record we are constrained to hold that the verdict is just and that the judgment should be affirmed.

*Affirmed.*